Good morning, Illinois appellate court first district court is now in session. The 4th division, the Honorable Justice Jesse G rarest presiding case number 19 dash 229 for people versus Antoine Elliott. Thank you, Mr Schaefer. Good morning, apologize for the delay. The previous matter went a little bit longer than we anticipated, but we're ready to proceed today with this case, and would counsel who are going to be arguing, please identify yourselves for the record and the party that you're representing. Morning, your honors, Brian Carroll from the state of state appellate defender's office for Mr. Elliott. Good morning, Susan Wobbekin, Assistant State's Attorney on behalf of the people of the state of Illinois. Okay, great. All right, so 15 minutes apiece appellate you want some time for rebuttal. Or is there about four minutes or minutes. Are you ready to proceed. Yes, your honor. Okay, please do so. I'll be addressing just the first issue the effective assistance issue, but if your honors have any questions on the sentencing issue I'll be happy to answer those as well. Okay, great. Thank you. Mr. Elliott's trial counsel was ineffective for failing to call an expert on eyewitness identification to bolster his misidentification defense, and in turn his post trial counsel was ineffective for failing to raise trial counsel's effectiveness in Mr. Elliott's motion for new trial. So the counsel trial counsel's entire theory of defense was that this was a case of misidentification. Therefore, it was critical for counsel to undermine the state's eyewitnesses identifications of Mr. Elliott. And as Illinois courts have recognized expert testimony on eyewitness identifications can go a long way in witnesses abilities to perceive and recall incidents are not necessarily sensical that ideas such as the stress of the situation presence of the weapon and lesser ability to recognize strangers can all roll can all affect the reliability of tonight witnesses identification. Because let me ask you on trial counsel. It made the decision not to call the expert wasn't it just trial strategy. Well, Your Honor, when we don't know on this record whether he made a conscious decision to or just failed to. But even assuming it was a trial strategy. Only sound trial strategy is entitled to deference and in this case where Mr. Elliott's defense rose and fell on whether or not the issues with her testimony during closing arguments closing arguments aren't evidence, whereas a expert would experts testimony would be evidence that the jury would could consider and and would just be a much stronger case it would hammer down the issues with Tiffany's identification like she herself. Acknowledged what high stress she was under she was, she said, her main concern was the safety of her son she kept looking switching back and forth, looking forward looking back at her son. And when confronted with discrepancies between what she told the police immediately after the incident and her trial testimony explanation was know how what stress was under at the time. And an expert would be able to hammer that home to the jury and make a much stronger case and get at least reasonable, a reasonable probability that the jury would have reached a different outcome. Mr Carol, you are just attacking him for not calling an expert regarding the female who identified your client. You're not attacking him for not calling an expert for Mr figure role who testified that he knew him that he was in a gang with Mr figure role as brother. On a previous occasion that he gave the defendants name to the police immediately at the scene that he identified the defendants photographs. So, I want to know, assuming that he could have or should have called an expert, where is the prejudice in, in your client's case, when, if he called an expert first the state could call an expert. And when we look at the biggest factors and the factors that the experts look at like gun focus. This case is not, to me, this case is not a case where this young lady first had done focus. She says, she sees the defendant arguing with people, she gets out of, unless I'm wrong, she gets out of her car. So she doesn't even know he has a gun he's arguing, and she's looking at him she thinks there's going to be a fight. So she gets back into her car. Then she sees him not playing the gun at her at the car behind her, but playing the gun toward the people on the sidewalk, and it starts to fire. And she has her kid turn away. And then, after she turns back the defendants standing in front of her looking her eye to eye face to face, and the guns down by his side. And so when I look at the biggest factors you add that to the fact that she, I think identified him in a lineup seven days later she gave a, according to the record and accurate, pretty accurate description of height, weight, and clothing. Where is the, the prejudice to the defendant, also given the testimony of Mr. Figueroa, and I'm not going to repeat all of the, what is it, cell phone data that connects him. How would, how would, how could we possibly get a different result even if it was error for him not to call an expert. Well, in terms of the bigger factor, an expert would be able to explain to the jury how a witnesses, you know, perceived degree of attention, their certainty in their identification, whatnot, is affected by the stress of situations and so give them a better idea of how to weigh the bigger factors. And in some ways showing how the bigger factors are not as, you know, that the science shows that the bigger factors are not the most accurate measure of the reliability of an eyewitness. And also in this case, yes, she testified, oh I, she got out of her car before the shooting started, she said she looked him straight in the eye. But there's also inconsistencies with what she saw and what the other witnesses said that, you know, she said, oh, he was wearing a hat. Other witnesses, he was wearing a hoodie. He was at the shoot, she said he was shooting in the street. Other witnesses said he was in the parkway. So there are inconsistencies showing that despite her description of the situation, her recall or her perception and recall of the situation is not as entirely accurate as she may believe. In terms of Jose's testimony, again, he's a, he's biased. I think that was the reason the initial counsel on this case didn't include him as someone who would be attacked by the expert witness. That, you know, his gang bias would affect his credibility. And he also had some issues in his testimony. He claimed that there was no car behind the shooter's car. And if, you know, if Tiffany came out of the, you know, car was behind and she actually got out and, you know, there is still prejudice that Tiffany- I think there's a reasonable probability that the outcome would have been different, given all of the other evidence. I guess, Your Honor. Okay. Any other questions? I would, I would ask you this, Mr. Carroll, follow up on a question that Justice Reyes had asked a little earlier. There's a, there's a, the court is to give a strong presumption that counsel was engaging in, in, in trial strategy. And you made, you made a comment. I wrote the comment down. You said you didn't know, and I'll paraphrase, you didn't know, you couldn't make that assumption based on this record. But it seems to me that it's your client's burden to show that this was, this was not sound trial strategy, that, that the presumption is that, that it is sound trial strategy. So if you're unable to do that on this record, does that not make, make Mr. Elliott's argument a little difficult to sustain? No, just to clarify my position. I'm saying we couldn't, we can't determine whether it was a strategic decision or a, just a, you know, a failure to investigate, but... Don't we have to necessarily do that? I don't think, no, Your Honor, because even if it's strategic, I think under these facts, it would be a unsound decision. Like, whether it's strategic or not, the question is, it's not a sound decision. So I think, despite the fact that we can't make that, is it strategic or not, what we can say is, if it was strategic, it was still not given the facts of this case. So, Mr. Counselor, I'm sorry, Mr. Justice, do you have any other questions to just ask that this court reverses Mr. Elliott's conviction to remand for a new trial pursuant to Issue 1 or remand for resentencing under... If he is sentenced in 2019 and he is eligible for parole, does that not negate his Miller-based argument? Well, just to clarify, we're not making a decision based on their analysis and the science it's based on. They can inform the court's decision. Okay. All right. Thank you, Mr. Carroll. Ms. Lampkin, any other questions? Okay. All right. Thank you, Mr. Carroll. Okay. Ms. Wobbekein? Yes, Your Honors. May it please the court, counsel, Susan Wobbekin, on behalf of the people of the state of Illinois. Your Honors, as defense counsel has stated, the record is absolutely silent as to counsel's reasons for not calling the expert witness. We don't know how much he investigated this. We don't know what even an expert would have testified to, and certainly don't know the effect that any imaginary testimony would have on the jury's verdict. So, as to the first, and so for these, and, excuse me, bearing in mind, too, that the counsel's decision, whether or not to call the expert was a matter of trial strategy, he's entitled to a very strong presumption that it was sound. So, as to that first prong, defendant has not shown any reason to find that counsel's decision was not sound. And, in fact, counsel was entitled to determine that calling the expert would not be as strong for their case as attacking the witness's credibilities and identifications through argument and recross examination, which he did very, very strenuously. So, the fact that counsel's strategy was ultimately not successful, and even the fact that perhaps an expert would have helped his case, doesn't make that strategy unsound. It just makes it unsuccessful. And then, as for, and I touched a little bit as to the adversarial testing, and counsel, you know, did not touch on that, but as I said, trial counsel tested and retested this case in numerous ways. So, we certainly don't have a failure to conduct any adversarial testing. And then, Justice Lampkin was asking about prejudice, as to that second prong. Again, we have no evidence as to what an expert would have testified, so how can we say that that expert would have swayed the jury's verdict in any way? And then, on top of that, we do have, Jurassic's identification was very strong, and it did meet all those five biggest factors. It was corroborated by Figueroa's testimony, and the physical evidence, and the cell phone evidence, and it's highly unlikely that an expert would have undermined her reliability and the reliability of her identification in any significant way. But, as I said, we also did have the other evidence. We have the evidence that Giovanni and defendant belonged to rival gangs, and although that did, in some way, I'll just touch on Jose Figueroa's testimony, since I'm talking about the gang evidence, although that could have undermined Figueroa's reliability, it also goes to motive in this case. So, it hurts defendant as much as it would hurt Figueroa, so it's pretty much moot at that point. We have the evidence that they were the rival gangs. We have the evidence that Giovanni was shot with a .40 caliber weapon. We have Jose Figueroa's identification testimony, that he had an unobstructed view of the shooter who he recognized from previous interactions as defendant. He knew all the specifics of defendant's gang rivalries, he knew his previous nickname as a Latin brother, he knew his new nicknames as a Milwaukee King, and then he identified him in a photo array the day of the shooting. And then his testimony, although perhaps there were inconsistencies, that's going to happen between different people, but his main story of how everything went down was corroborated, did corroborate Jurassic's testimony, was corroborated by Lucha Ferrara's testimony, which defendant has said we should listen to. And although she didn't identify anybody, her version of events does significantly line up with the other two witnesses. So, taking that into account, that lends to the credibility of the identification witnesses. And then also we have the cell phone evidence showing that defendant wanted to buy .40 caliber bullets the day before the shooting, was in a stashed room because of an emergency within hours after the shooting, was in possession of a gun the day after the murder, sent texts explaining his gang status and his nicknames and his previous nicknames, bragged that he was a royal killer. And royal, I don't know, I don't think I did say the Sin City Royals, I'm going to get that wrong, but royal was the name of the gang that Figueroa was in, and defendant was bragging that he was a royal killer. He sent a screenshot of an article about the shooting saying royal down, performed numerous Facebook and internet searches on the phone searching for the victim's names and shootings in the area. He had a tremendous amount of interest in this shooting and knew that it was a royal who had been shot, a royal who was killed hours after the murder, which certainly was a lot of information to have when the investigation was ongoing. And then as to the prejudice prong, again, we can't even say that he was prejudiced. Oh no, I'm sorry, I'm talking about the prejudice, I'm sorry. And because of this, because of all that evidence, we can't say that even had Jurassic's identification been undermined, that the defendant was prejudiced, that the verdict would have been different. We have all this other evidence against him, and defendants simply has not given that affirmative evidence that that would have happened. So for these reasons, we ask that the court reject defendants ineffective assistance of trial counsel claim. And then for the same reasons, we ask that you reject the ineffective assistance of post trial claim because post trial can't be faulted for raising this meritless claim. And if you have no questions, I can quickly touch on the sentencing issue if you'd like, or. Please proceed. Okay, sure. So, as to the sentencing issue defendant sentences presumed proper because it was within the statutory range and trial counsel is also presumed to have considered all of the mitigating evidence and other factors that were presented to him during the sentencing hearing. Defendant has to offer some affirmative evidence that count that the trial court did not properly consider these factors in order to overcome this presumption of properness is reiteration of the mitigating factors and the length of the sentence does not overcome that presumption. And in fact, Judge saxes decision is very explicit as to the factors that he considered. He said he considered the PSA, the lawyers arguments defend his childhood, the fact that defendant was not abused that he was an A and B student and athlete in high school, that he had a job that he had relationships with his child's growth with his child's mother. And then he also touched on the potential for rehabilitation. The fact that he said he considered the PSI gives that presumption that he did do so anyway, but then he also went through and said, he talked about defendants priors talked about the fact that he was convicted for an unlawful possession of a 40 caliber gun the same type used in the shooting. After the murder took place. You know, and he did listen to defendants statements and allocution but rejected a lot of defendants claims he didn't believe that defendant had quit the gang. He said he disagreed with defendants statement that he was remorseful and felt bad for his actions. And he based that on the fact that defendant had sent all those texts, but you know bragging about the shooting, the fact that he had numerous there were numerous photos on that phone of defendant with guns and flashing gang signs. And the fact that defendant was arrested with a 40 caliber gun. After the murder, he didn't feel so remorseful that he turned his life around after he killed this 16 year old boy he was still, you know, continuing in his ways. And then, finally, the court took into account the fact that defendant. He said defendant was totally in control. At the time he chose to shot, shoot this 16 year old boy, and then he shot this boy for no other reason than that he belonged to a different gang And that that statement that defendant was totally in control goes to defendants argument about age. First of all, just because the court didn't mention age, as I said, he read the PSI so he's presumed to to have taken everything in that PSI into consideration. The court also meant Defense Council mentioned defendants age during the hearing, the court mentioned defense defendants birth date and the date of the arrest during his sentencing, so he's presumed again that presumption that I first talked about comes into play he's presumed to have considered it. And the fact that the court said defendant was in control when he did that shooting. That goes against a lot of these age based arguments that defendant is now claiming defendant didn't have any of that impetuousness of youth or no control and all those other issues. No, the court found no he was in control when he did this, he was not under any limitations because of his, his youth where you know he was 20 years old one month away from becoming from turning 21 he was not very young. So anyway, for those records. For those reasons, the record affirmatively affirmatively refuse defendants claim that the trial court abused its discretion, and we ask that you affirm defendants convictions and sentence. And then we rest on our brief. Any questions from the panel. No. I thank you very much rebuttal. Your Honor, I'm going back to the first issue, the ineffective assistance. What in terms of what acknowledge we don't have any like report from an expert, just saying like what an expert would testify to. However, Illinois courts like Lerma and Allen cited in a brief, the courts recognize what the, you know, the current science says about eyewitness testimony so we have a, we have some clue of what kind of evidence would be presented by an expert. And in terms of the text messages of Elliot know the state says he's bragging about being a royal killer. If I'm correct, the text messages saying we royal killer is plural which in That's just showing that his gang is royal killer which not in dispute. And again, the fact that he knows about like that a royal is killed where it happened. I mean, he He's in the gang. It's that's again it's not in dispute and it would be Reasonable for him to want to know what's going on with his gang. So the fact that he's doing searches and whatnot. Is that Direct evidence of his guilt. He never once explicitly stated that he committed this crime. For sentencing. No, it's going to be 90 years old when he gets out. So, assuming he lives that long, which is Quite quite an assumption to make. Can I just interrupt you. That was, I think that was Justice Martin's question. You said he'll be 90 when he gets out because he got I forgot the sentence all that quickly 70 year sentence but statute says that if he's under 21 And no matter what sentencing gets he still will be eligible for parole after serving 20 years so and this case law that says it's not the It's not the The, what is it. I think it's 40 years is over 40 is Violated for juvenile, but for and he's, of course, he's not a juvenile, but Doesn't isn't he eligible for parole in 20 years so it actually get out at 40 or I agree with that, Your Honor, but still in this case. I believe the The nature of the case like this was a reckless impulsive shooting no indication. It was like a long pre meditated Attack. The, the court, the trial court put a lot of emphasis on the pictures of on social media of him flashing guns and stuff. And again, that's just No stupid thing young people do that. The things that the court focused trial court focused on were things that are That, again, like Miller was not controlling it is instructive on like these are the type of reckless Not thought out behaviors of a young person and I It doesn't properly reflect his rehabilitative potential and because of that, even, even if he's eligible For parole. I think this. Given this case, the 70 year sentence is excessive. Just as a bit of a question. Okay. All right. Well, thank you councils. Will take the case under advisement be rendering a decision on shortly. At this point in time, since there are no other questions. Court is adjourned. Thank you very much.